IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 168 MR WCM

APRIL LEDFORD                         )
                                      )
        Plaintiff,                    )
                                      )
V.                                    )          MEMORANDUM AND
                                      )          RECOMMENDATION
BRYSON CITY POLICE                    )
DEPARTMENT; CHRIS DUDLEY;             )
CURTIS COCHRAN; SWAIN COUNTY          )
SHERIFF'S DEPARTMENT; TOWN OF         )
BRYSON CITY; ANDREW BRYANT;           )
TOM SUTTON; SWAIN COUNTY JAIL;        )
BETH MCDONALD; HILDA ARCH;            )
and DANIEL SCOTT PEARSON              )
                                      )
        Defendants.                   )
_____)

This matter is before the Court on the following motions:

1.  Motion to Dismiss filed by Swain County Sheriff Curtis Cochran, Swain

    County Sheriff's Department, Swain County Jail, Andrew Bryant, and

    Hilda Arch (the "Swain County Defendants' Motion to Dismiss," Doc. 15);

    and

2.  Motion to Dismiss First Amended Complaint filed by Defendant Tom

    Sutton ("Sutton's Motion to Dismiss" Doc. 23).

1

The Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636, are fully briefed, and are ripe for ruling.  See Docs. 16, 24, 25, 28, 29, 30, 31.[1]

## I.     Background

Plaintiff April Ledford, who is proceeding *pro se*, filed her original complaint on June 30, 2020. Doc. 1. On August 21, 2020, Plaintiff filed an Amended Complaint naming the following defendants: Swain County Sheriff's Department, Curtis Cochran, Andrew Bryant, Swain County Jail, and Hilda Arch (collectively, "Swain County Defendants"); Beth McDonald, Daniel Scott Pearson; Bryson City Police Department, Chris Dudley, Town of Bryson City, and Tom Sutton.  Doc. 12.

Plaintiff's claims appear to arise out of two distinct events: (1) a July 1, 2017 incident during which Plaintiff was arrested; and (2) Plaintiff's arrest on November 1, 2017 and subsequent detention at the Swain County Jail through November 17, 2017.

### A. July 1, 2017 Events

On July 1, 2017, Plaintiff was outside a Walgreens in Bryson City, North Carolina waiting for friends to pick her up. She had been prescribed Xanax for severe emotional distress and depression and "had had too much beer."  Doc.

---

[1] Although surreplies are not allowed by the local rules without leave of court, all of Plaintiff's filings have been considered in light of her *pro se* status.

2

12 at 10. She was taken by emergency medical services to the Emergency Room at the Swain County Hospital. Id.

Apparently after Plaintiff had been discharged, but before she had physically left her hospital room, Swain County Sheriff Curtis Cochran ("Sheriff Cochran") and Bryson City Police Officer Chris Dudley ("Dudley") "showed up." Sheriff Cochran then left, and Dudley remained and made Plaintiff feel uncomfortable as he stood in the doorway of her room and watched her gather her belongings. Id.

As Plaintiff walked toward the exit (presumably of her hospital room), Dudley informed Plaintiff that she was going to jail, though he did not explain the reason. Plaintiff responded that there was no reason for her to go to jail, at which point Dudley grabbed Plaintiff's arms and slammed her to the floor, where she hit her head, left shoulder, left elbow, and left knee. Dudley handcuffed Plaintiff and told the nurses he was sorry they had to "see that." Id.

Dudley then placed Plaintiff in the passenger side of his SUV. Plaintiff alleges that "the concussion in [her] head kicked in and [she] blacked out." Plaintiff also alleges that she remembers Dudley touching her "private areas" with his hand and waking up being very sore in her "private areas" as well as having pain from her other injuries. Id.

Dudley took Plaintiff to the Swain County Jail where she was "frisked by two females." At that point, Plaintiff noticed that she was missing a pendant which had been given to her by her late husband. Plaintiff inquired if "they" had seen it and "they" responded in the negative, though the silver chain that had been holding the pendant was just barely hanging around Plaintiff's neck with the clasp broken. Plaintiff states that the pendant had been securely attached to the chain while she was in the hospital and that she had been wearing it when she left the hospital room. Id.

Less than an hour later, Plaintiff was released from the Swain County Jail. She recalls feeling intense pain in her private areas, later noticed bleeding and felt as if someone had scratched the area, was experiencing throbbing head pain, and her knee was terribly sore. Id. at 11.

### B. November 1, 2017 – November 17, 2017 Events

Approximately four months later, on November 1, 2017, Plaintiff went to the Swain County Courthouse to visit the Veterans' Office. While she was there, and with the Mayor of Bryson City, Tom Sutton ("Sutton"), looking on, she was arrested by "Bryson City Police Officer Andrew Bryant" ("Bryant") for failing to appear at a hearing on a charge of 2nd degree trespassing. Plaintiff alleges she did not receive notice of the hearing and was receiving medical treatment during the week of October 28 when the hearing was scheduled to take place. Doc. 12 at 11.

It appears that Plaintiff remained in custody following her November 1, 2017 arrest, as she alleges that on November 6, 2017, a detention officer with the nickname "Bean" grabbed and squeezed her arm "really hard and pulled [her] to the pod." Id.[2] Additionally, Plaintiff alleges that while she was detained, she was not given necessary medications for diabetes, PTSD, a broken thumb, and depression; and that the "Swain County Sheriff's Department and Jail" failed to provide a "safe and healthy environment." Id.[3]

Finally, Plaintiff alleges that while detained, she "was threatened many times by other inmates" and that she "voiced her concerns to Head of the Jail, Leanna Arch" ("Arch"),[4] but that Plaintiff received no response. Plaintiff also alleges that she was physically assaulted by two other inmates and that, in

---

[2] In a later filing, Plaintiff identifies Daniel Scott Pearson ("Pearson") as the officer who grabbed her arm on November 6, 2017. Doc. 25 at 5.

[3] With respect to the conditions of her confinement as a pretrial detainee, Plaintiff asserts that the water "was foul," that she was refused toilet paper, that one of the female guards was obviously intoxicated, that another inmate was seen inhaling what appeared to be a white powdery substance, and that the food at the jail was unhealthy as it was full of sugar and carbohydrates – "a diet that is unhealthy for Diabetics…" Doc. 12 at 11.

[4] Although Plaintiff names "Hilda Arch" as a defendant in her Complaint, she also refers to "Leanna Arch" in the narrative explanation of her claims. See Doc. 12 at 5 & 11. This appears to be the same person. See Doc. 31 at 2 ("Swain County Jail Head Hilda (aka Leanna) Arch"). The Swain County Defendants likewise refer to Hilda Arch and Leanna Arch interchangeably. See Doc. 16 at 8 ("Leanna Arch is entitled to dismissal….") & 10 ("Hilda Arch respectfully request[s]" that the Court grant the Motion to Dismiss).

response, "they" placed Plaintiff in a small cell which wreaked havoc on her already distressed mental state. Id.

### C. Plaintiff's Claims

Plaintiffs' Amended Complaint is not completely clear regarding the specific claims Plaintiff intends to assert, or the parties against whom she makes each claim.

In their Motion to Dismiss, the Swain County Defendants characterize Plaintiff's Amended Complaint as asserting the following claims:

1. Negligence against Sheriff Cochran based on the July 1, 2017 events;

2. §1983 claim against Dudley for excessive force;

3. §1983 claim for unlawful arrest and "lack of due process" against the Bryson City Police Department and Bryant arising out of Plaintiff's November 1, 2017 arrest;

4. Negligence and §1983 claim against "Guards" and McDonald for failure to provide adequate medical care during Plaintiff's November 1, 2017 – November 17, 2017 detention; and

5. General negligence against Swain County Sheriff's Department, Swain County Jail, and Arch based on the alleged failure to provide a safe and healthy environment and based on Plaintiff's placement in a small cell after being attacked by other inmates.

6

In his Motion to Dismiss, Sutton characterizes Plaintiff's Amended Complaint as asserting the following claims:

1. Negligence against Sheriff Cochran based on the July 1, 2017 events;

2. §1983 claim against Dudley for excessive force on July 1, 2017;

3. §1983 claim for false arrest against Bryant stemming from Plaintiff's November 1, 2017 arrest;

4. Negligence and §1983 claim against "Sheriff and jail staff" for inadequate medical care; and

5. "Claim for negligence by jail staff."

Significantly, Plaintiff has not contested either characterization of her claims. In view of these characterizations, as well as Plaintiff's *pro se* status, the undersigned interprets Plaintiff's Amended Complaint as asserting the following claims:

1. Claims arising out of the July 1, 2017 Events:

    a. Negligence against Sheriff Cochran; and

    b. §1983 claim for excessive force/sexual assault against Dudley.

2. Claims arising out of the November 1, 2017 – November 17, 2017 Events:

    a. §1983 claim for false arrest/4th Amendment seizure against Bryson City Police Department, Town of Bryson City, Bryant, and Sutton;

    b. §1983 claim based on Plaintiff's "unlawful detention" against Swain County Sheriff's Department and Swain County Jail;

7

c. §1983 claim for excessive force against Pearson;

d. Negligence and §1983 claim for failure to provide adequate medical care against McDonald; and

e. Negligence based the conditions of Plaintiff's confinement against Swain County Sheriff's Department, Swain County Jail, and Arch.

## II. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

8

Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citation omitted). At the same time, the court is not required to accept a *pro se* plaintiff's contentions as true, Denton v. Hernandez, 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), cannot ignore a clear failure to allege facts which set forth a cognizable claim, and does not act as a *pro se* plaintiff's advocate or develop claims that a plaintiff fails to raise. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed."); Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) (district courts are not expected to assume the role of advocate for the *pro se* plaintiff).

### III.  Discussion

Sutton seeks the dismissal of Plaintiff's claim against him.  Doc. 24.  The Swain County Defendants seek the dismissal of all of Plaintiff's claims against them.  Doc. 16 at 2.

#### A. Claim Against Sutton

In her Amended Complaint, Plaintiff alleges that Sutton witnessed her November 1, 2017 arrest at the courthouse.

Sutton argues that this allegation fails to state a claim against him "because he did not personally participate in the alleged constitutional violation."  Doc. 24 at 3.

In response, Plaintiff asserts that she "is not bringing suit against Mayor Sutton for personal reasons, but for his role as Mayor and his ties to the city of Bryson City and his role over the Bryson City Police Department."  Doc. 29 at 5; see also Doc. 25 at 5 ("Tom Sutton, as Mayor of Bryson City, is over the Police Department, thus a correctly named defendant in this matter.").

Plaintiff has not alleged that Sutton instructed Bryant to arrest Plaintiff or that Sutton was personally involved in Plaintiff's November 1, 2017 arrest.

Further, Plaintiff has not explained how Sutton could be held responsible for Bryant's actions,[5] but to the extent Plaintiff does seek to impose

---

[5] Assuming that Sutton did have some ability to direct the work of Bryson City police officers, it is not clear that Bryant was actually employed by the Bryson City Police

liability upon Sutton based on the acts of Bryant, such claims generally are not cognizable pursuant to §1983. See Pratt v. Robbins, No. 5:20-cv-00170-MR, 2020 WL 7227303, at * 2 (W.D.N.C. Dec. 8, 2020) ("To establish liability under 42 U.S.C. § 1983, however, a plaintiff must show that the defendant "acted personally" to cause the alleged violation. As such, the doctrine of respondeat superior does not apply in actions brought under § 1983"); Davis v. Hampton County Solicitor Office, No. 9:13–cv–1930 DCN, 2013 WL 5140732 at *4 (D.S.C. Sept. 12, 2013) ("if the Complaint could be construed such that Plaintiff intends to sue the Mayor because s/he is a supervisor or manager of a person who committed misconduct, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions"); Thompson v. City of Charlotte, 3:20-cv-370-MOC-DSC, 2020 WL 7033966 at *4 (W.D.N.C. Nov. 30, 2020) ("there simply is no vicarious liability in Section 1983 proceedings").

The undersigned will therefore recommend that Sutton's Motion to Dismiss be granted, and that the claim against Sutton be dismissed.

---

Department. While Plaintiff alleges that Bryant was a "Bryson City Police Officer," the Bryson City Police Department, Chris Dudley, and the Town of Bryson City aver in their Answer that Bryant was a "Swain County Deputy Sheriff." Doc. 17 at 2. Similarly, the Swain County Defendants state in their briefing that Bryant was employed by the Swain County Sheriff's Department at the time of Plaintiff's November 1, 2017 arrest. Plaintiff appears to have accepted this position, as in subsequent briefing Plaintiff refers to Bryant as a "Sheriff Deputy." Doc. 29 at 1.

11

### B. Claim Against Bryant

The Swain County Defendants argue that Plaintiff cannot state a claim against Bryant because Bryant arrested Plaintiff pursuant to a facially valid warrant. See Doc. 16 at 7-8.

In response, Plaintiff contends that Bryant should have released rather than detained her, and that Bryant "refused to listen to Plaintiff's assertion" that she never received notice of the October 28, 2017 court hearing. See also Doc. 12 at 11 (alleging that Plaintiff was arrested for failure to appear at an October 28, 2017 hearing).

Before Plaintiff filed her Amended Complaint, the Swain County Sheriff's Department, Sheriff Cochran, and Bryant filed a prior Motion to Dismiss. See Doc. 8. Attached to that Motion to Dismiss was an October 12, 2017 Warrant for Plaintiff's arrest. The Warrant was issued by a Magistrate and was based on a complaint by Christina Medley (the "Warrant," Doc. 8-1).[6] It does not appear that Bryant was involved in procuring the Warrant but

---

[6] The Warrant may be considered in the context of the Swain County Defendants' Motion to Dismiss. See Witthohn v. Fed. Ins. Co., 164 Fed. Appx 395, 396 (4th Cir. 2006) ("a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed"); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.")(internal quotation marks omitted)(alterations in original).

12

rather merely served the Warrant. Further, Plaintiff does not contest the facial validity of the Warrant; instead, Plaintiff states that she and Medley "remain friends today, and Medley regrets she ever contacted law enforcement." Doc. 31 at 4. However, Plaintiff's assertion that Medley did not intend for Plaintiff to be arrested is irrelevant to the question of whether Bryant's reliance on the Warrant was appropriate.

Under these circumstances, Plaintiff has not stated a §1983 claim against Bryant. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("The sheriff's deputies contend that they could not have committed a tort of false arrest in violation of the Fourth Amendment because they were acting pursuant to a facially valid arrest warrant. We agree."); see also McConnell v. Watauga County, 5:17-cv-195-MOC-DCK, 2019 WL 2344223, at *4 (W.N.N.C. May 31, 2019) ("an officer who arrests a suspect pursuant to a warrant does not violate the Fourth Amendment unless that officer did not possess probable cause to seek the warrant").

The undersigned will therefore recommend that Plaintiff's claim against Bryant be dismissed.

### C. Claims Against the Swain County Sheriff's Department and Swain County Jail

The Swain County Defendants argue that the claims against the Swain County Sheriff's Department and the Swain County Jail should be dismissed because these entities may not be sued under North Carolina law. Doc. 16 at 4-5.

They are correct. Efird v. Riley, 342 F. Supp. 2d 413, 420 (M.D.N.C. 2004) ("There is no North Carolina statute authorizing suit against a county's sheriff's department"); Smith v. Cherokee Cty. Det. Ctr., No. 1:16-CV-39-FDW, 2016 WL 1420982, at *1 (W.D.N.C. Apr. 11, 2016) (Cherokee County Detention Center "is not a distinct legal entity capable of being sued..."); Mann v. Mecklenberg County Sheriff's Department, No. 3:18-cv-654-FDW, 2019 WL 9832187, at *3 (W.D.N.C. Jan. 28, 2019) ("Plaintiff's claims against the Mecklenburg County Sheriff's Department must be dismissed because that entity lacks the legal capacity to be sued"); Speller v. Mecklenburg County Jail, No. 3:18-cv-348-FDW, 2018 WL 3636573, at *2 (W.D.N.C. July 31, 2018) ("Jails may not be sued").

The undersigned will therefore recommend that the claims against the Swain County Sheriff's Department and the Swain County Jail be dismissed.

### D. Claim Against Sheriff Cochran

In her Amended Complaint, Plaintiff asserts that Sheriff Cochran was

14

negligent because he "left [Plaintiff] alone" with Dudley on July 1, 2017. In her briefing, Plaintiff contends that Sheriff Cochran is "a correctly named defendant" because he is "over the Swain County Sheriff's Department and the Swain County Detention Center, thus over Defendant Police Officer Dudley on July 1, 2017 and over the actions or omissions of Hilda Arch…" Doc. 31 at 2.

The Swain County Defendants argue that Plaintiff's negligence claim (based on the July 1, 2017 events) should be dismissed because Sheriff Cochran was not Dudley's employer and because Plaintiff has not alleged that Sheriff Cochran owed or breached any duty to Plaintiff. Additionally, the Swain County Defendants assert that Sheriff Cochran is entitled to sovereign immunity with respect to any official capacity claim, and public official immunity with respect to any individual capacity claim. Doc. 16 at 6-7.

The undersigned agrees that Plaintiff's allegations against Sheriff Cochran fail to state a negligence claim. Plaintiff has provided no authorities to support the proposition that Sheriff Cochran, as the Sheriff of Swain County, may be held liable for the alleged conduct of Bryson City police officers, either generally or specifically as to Dudley. See e.g. Harris v. Miller, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994) ("One who borrows another's employee may be considered a temporary master liable in respondeat superior for the borrowed employee's negligent acts if acquiring the same right of control over the

15

employee as originally possessed by the lending employer").[7]

Additionally, because the Amended Complaint does not specify whether Plaintiff is attempting to sue Sheriff Cochran in his official or individual capacity, Plaintiff's negligence claim against Sheriff Cochran should be considered an official capacity claim.  See Brattain v. Stanly County Board of Education, No. 1:19cv1037, 2020 WL 6364718, at *3 (M.D.N.C. Oct. 29, 2020) ("As to the state-law claims, North Carolina requires a complaint to clearly state the capacity in which a public official is being sued, and if it is unclear, the courts will presume the official is being sued in his or her official capacity only.") (citing White v. Trew, 366 N.C. 360, 736 S.E.2d 166, 168-69 (2013); Mullis v. Sechrest, 347 N.C. 548, 495 S.E.2d 721, 723-25 (1998)).

"Under North Carolina law, '[t]he doctrine of sovereign immunity bars actions against public officials sued in their official capacities.'" Robinson v. Bladen County Sheriff Department, No. 7:10–CV–146–BO, 2010 WL 4054389 at *4 (E.D.N.C. Oct. 14, 2010) (quoting Beck v. City of Durham, 154 N.C.App.

---

[7] In her Amended Complaint, Plaintiff identifies Dudley as being a "Deputy, Resource Officer" and shows his address as the same address for Sheriff Cochran and the Swain County Sheriff's Department. Doc. 12 at 3.  However, in the body of her Amended Complaint, Plaintiff refers to him as "Bryson City Police Officer Chris Dudley." Doc. 12 at 7 & 10 ("Police Officer Chris Dudley" and "Bryson City Police Officer Chris Dudley"). In her briefing, Plaintiff argues that "[a]lthough Sheriff Cochran was not Dudley's employer, the fact that the two arrived and acted in concert with each other created an employer-employee relationship."  Doc. 25 at 3; see also id. ("He was Dudley's de facto 'boss' who apparently instructed Dudley to stay behind and transport Plaintiff to jail.").

221, 229, 573 S.E.2d 183, 190 (2002)). "Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity." Id. (citing Summey v. Barker, 142 N.C.App. 688, 691, 544 S.E.2d 262, 265 (2001)); see also Phillips v. Gray, 163 N.C. App. 52, 56-57, 592 S.E.2d 229, 232 (2004) (same). "A plaintiff bringing claims against a governmental entity and its employees acting in their official capacities must allege and prove that the officials have waived their sovereign immunity or otherwise consented to suit; by failing to do so, the plaintiff fails to state a cognizable claim against either the official or the governmental entity." Sellers v. Rodriguez, 149 N.C.App. 619, 623, 561 S.E.2d 336, 339 (2002).

Here, there is no allegation in the Amended Complaint that Sheriff Cochran waived his sovereign immunity for any official capacity claim arising out of the July 1, 2017 incident. See Torchia v. Cherokee County Sheriff's Dept., No. 2:14–cv–00020–MR–DLH, 2015 WL 248280, at *7 (W.D.N.C. Jan 20, 2015) (recommending dismissal of state law claims asserted against sheriff in his official capacity because Plaintiff "failed to allege a waiver of sovereign immunity in the Complaint, a necessary requirement to assert an official capacity claim…").[8]

---

[8] To the extent Plaintiff is attempting to assert a negligence claim against Sheriff Cochran based on his alleged failure to ensure a "safe and healthy environment" during Plaintiff's November 1-17, 2017 detention, Plaintiff has likewise failed to allege Sheriff Cochran waived sovereign immunity with respect to such a claim.

The undersigned therefore will recommend that Plaintiff's negligence claim against Sheriff Cochran be dismissed.

### E. Claim Against Arch

Plaintiff alleges that she "was threatened many times by other inmates and [she] voiced [her] concerns to Head of the Jail – Leanna Arch – but nothing was done about it." Doc. 12 at 11.

In her briefing, Plaintiff argues that Arch was negligent in the following ways: (1) Arch failed to respond to Plaintiff's complaints regarding threats from other inmates; (2) after Plaintiff was physically attacked by two fellow inmates, Arch "displayed blatant favoritism" by siding with the other two inmates, and confined Plaintiff to a small cell "with a convicted felon…whose strange mood swings and outbursts caused more fear, anxiety, and mental anguish for Plaintiff" and constituted "cruel and unusual" punishment;[9] (3) Arch "ignored Plaintiff's medical conditions and her need for medication;" and (4) Arch "ignored Plaintiff's complaints regarding the foul water, the unhealthy food…and the lack of toilet paper." Doc. 31 at 6-7.

The Swain County Defendants argue that any negligence claims against

---

[9] Although Plaintiff asserts that she "was threatened many times by other inmates and [she] voiced [her] concern" to Arch, it is not clear whether these threats were made by the same inmates Plaintiff contends attacked her. See also Doc. 25 at 5 ("Plaintiff told Arch on several occasions about the threats she received, the danger she felt…. Arch ignored her complaints…").

Arch arising from these alleged acts must be dismissed because those claims are barred by either sovereign immunity (with respect to an official capacity claim) or public official immunity (with respect to an individual capacity claim).

Because the Amended Complaint does not specify the capacity in which Arch is named, Plaintiff's negligence claim against Arch should be considered as being an official capacity claim. See Brattain, 2020 WL 6364718, at *3. With respect to any state law negligence claim asserted against Arch in her official capacity, Plaintiff has not alleged a waiver of sovereign immunity, and therefore such claim is subject to dismissal. Robinson, 2010 WL 4054389 at *4 ("Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity"); Sellers, 561 S.E.2d at 339 (a plaintiff who fails to allege a governmental official acting in his or her official capacity waived their sovereign immunity fails to state a claim).

The undersigned will therefore recommend that Plaintiff's negligence claim against Arch be dismissed.

Additionally, in opposition to the Swain County Defendants' Motion to Dismiss, Plaintiff contends that Arch's actions violated Plaintiff's rights pursuant to §1983. Doc. 25 at 4-5. In Reply, the Swain County Defendants argue that to the extent Plaintiff is asserting a claim under §1983 against Arch, Plaintiff has failed to allege a deliberate indifference claim adequately. See

Doc. 28 at 3 ("Simply alleging that Arch put her in a small cell, and that the Jail environment was unhealthy, does not state a section 1983 claim").

As discussed above, the undersigned does not read Plaintiff's Amended Complaint as asserting a §1983 claim against Arch but rather only a negligence claim.

However, even if Plaintiff were asserting a §1983 claim, Plaintiff's allegations, while describing jail conditions that are less than ideal, do not appear to rise to the level of an "extreme deprivation" necessary to support a constitutional violation. See Harris v. FNU Connolly, No. 5:14–cv–128–FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016) (plaintiff's allegations, even if true, that he was held for 45 days in an unsanitary holding cell with urine, feces, and vomit on the floors and walls; was made to go without a shower for sometimes up to 8 or 9 days; and was provided no sanitary items (soap, paper, towels, toilet paper) did not rise to the level of a constitutional violation).

Further, to the extent Plaintiff categorizes Arch's action of placing Plaintiff in a small cell with a felon following an attack by other inmates as "negligent," it cannot support a 14th Amendment claim. See Waybright v. Frederick Cnty., Md., Dep't of Fire & Rescue Servs., 528 F.3d 199, 205 (4th Cir. 2008) (negligently inflicted harm "is categorically beneath the threshold of constitutional due process"); Gross v. White, 340 Fed. Appx. 527, 532 (11th Cir. 2009) (unpubl.) ("Even if it would have been safer to confine [plaintiff] to a

20

separate cell, that is not enough to show deliberate indifference").[10]  And, Plaintiff has not alleged that such confinement, even if done as a punitive measure, dramatically worsened the terms of her confinement. See Timms v. Hernandez, No. 5:13-CT-3285-D, 2014 WL 12781208, at *3 (E.D.N.C. July 18, 2014) ("Timms has failed to allege that he was subjected to sanctions which dramatically worsened the terms of his confinement. Thus, the court dismisses the claim") (internal citations omitted).

Finally, Plaintiff does not sufficiently allege that Arch was aware of Plaintiff's need for medications or that Plaintiff informed Arch of specific threats prior to being attacked. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (a plaintiff establishes "deliberate indifference" by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety"); Francis v. Johns, 5:11–CT–3005–FL, 2013 WL 1309285, *4 & *6 (E.D.N.C. March 28, 2013) (explaining that deliberate indifference "requires that a prison official actually know of and

_____

[10] The Fourth Circuit has explained that the "deliberate indifference" standard applies to both inmates and pretrial detainees.  Brown v. Harris, 240 F.3d 383, 388, n. 6 (4th Cir. 2001).  Further, although a pretrial detainee's claim is based on the Fourth Amendment, "Eighth Amendment cases are instructive in assessing deliberate indifference Fourteenth Amendment claims."  Jones v. Henderson County Detention Center, No. 1:15-cv-132-FDW, 2017 WL 581324, at *6 n.7 (W.D.N.C. Feb. 13, 2017); Harris, 2016 WL 676468, at *4 (W.D.N.C. Feb. 18, 2016) ("Plaintiff was a pretrial detainee, rather than a prisoner, at all relevant times. Thus, his claim is properly brought under the Fourteenth Amendment's due process clause, rather than under the Eighth Amendment's cruel and unusual punishment clause") (citing Bell v. Wolfish, 99 S.Ct. 520, 441 U.S. 520, 535-38, 60 L.Ed.2d 447 (1979))

21

disregard an objectively serious condition, medical need, or risk of harm" and finding, with respect to plaintiff's allegations that he was threatened by convicted inmates, that such allegations were subject to dismissal because plaintiff "provided no details or dates as to when the alleged threats occurred or whether any defendant was made aware of the specific threat").

## IV.    Remaining Claims[11]

In the event these recommendations are adopted, the following claims would remain:

1. §1983 claim for excessive force/sexual assault against Dudley;

2. §1983 claim for false arrest/4th Amendment seizure against Bryson City Police Department and the Town of Bryson City;

3. §1983 claim for excessive force against Pearson; and

4. Negligence and §1983 claim for failure to provide adequate medical care against Beth McDonald.

## V.    Service on Pearson and McDonald

The undersigned notes that there is nothing in the record to indicate that Plaintiff has served Pearson and McDonald. See Doc. 33 (unexecuted returns).

---

[11] The claims listed in this section were not the subject of either Motion to Dismiss.

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

> Fed. R. Civ. P. 4(m).

The undersigned therefore will recommend that Plaintiff be advised that unless good cause is shown for her failure to effect service of the Summonses and the Amended Complaint on Pearson and McDonald, Plaintiff's action against these Defendants will be dismissed without prejudice.

## VI. Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** that:

1. The Motion to Dismiss filed by Swain County Sheriff Curtis Cochran, Swain County Sheriff's Department, Swain County Jail, Andrew Bryant, and Hilda Arch (Doc. 15) be **GRANTED**, and the following claims be **DISMISSED**:

   a. All claims against Andrew Bryant;

   b. All claims against the Swain County Sheriff's Department;

   c. All claims against the Swain County Jail;

23

d.  All claims against Sheriff Cochran; and

e.  All claims against Hilda Arch.

2.  The Motion to Dismiss First Amended Complaint filed by Defendant Tom Sutton (Doc. 23) be **GRANTED**, and that all claims against Tom Sutton be **DISMISSED**.

3.  Plaintiff be advised that unless good cause is shown for her failure to effect service of the Summonses and the Amended Complaint on Pearson and McDonald, Plaintiff's action against these Defendants will be dismissed without prejudice.

4.  Following a ruling on the Motions to Dismiss and resolution of the service issue regarding Pearson and McDonald, that Plaintiff be notified of the Pro Se Settlement Assistance Program.

Signed: March 12, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).